Good morning, your honors. May it please the Court, opposing counsel. My name is Kiger Sy, appointed counsel from the Federal Public Defender's Office, here representing the appellant, Mr. Alton Young. The issue before this Court is simple. Is Mr. Young a Tier 1 or Tier 3 offender, but has been made more complicated due to the complexity of SORNA, the seemingly problematic analysis via the categorical approach, and the potential concerns raised in this Court's en banc decision, Castillo-Rivera, which applied language from the Supreme Court case Gonzales v. Duenas-Alvarez. SORNA requires Mr. Young to register as a sex offender pursuant to a prior conviction that he sustained under Mississippi Code 97-523. At sentencing, the District Court overruled application of the categorical approach to a Tier 3 offender instead of a Tier 1, Tier 3 being the most serious category. We allege that the District Court procedurally erred in finding him to be a Tier 3 offender rather than a Tier 1. If we apply our en banc decision in the Castillo-Rivera case, do you have anything, any specific examples that you would use to say that it's not just theoretical? Your Honor, we do not have any State cases from Mississippi that have applied the case examples that were required by Duenas-Alvarez. However, we would like to point out that Castillo-Rivera was not a SORNA Tier classification case. It was an illegal reentry case that dealt with aggravated felony enhancements. Don't we do that, though, all the time now? We say — I think we did that in Ellis. We say that in cases that if you have to have a real-life example that it's not just theoretical. And I think Ellis was the first case that we started doing that. It doesn't matter if it's exactly in the same topic, criminal statute. That's the methodology that we use, that it can't just be theoretical. Your Honor, we would submit that the court in Castillo-Rivera applied a different, a different categorical approach that was applied in this Court's unpublished decision, United States v. Joe Coleman. In Castillo-Rivera, the language that was cited regarding how the categorical approach should apply was that the Castillo-Rivera Court only required finding that the Texas statute offense be described in the Federal Code. But Coleman is just a case that it didn't matter which — whether it was one or three — it was — I mean, whether it was categorical or not. It was still going to be. And that was the point. It wasn't the point of that to say even using the most rigorous categorical, let's just get to it, it still doesn't matter. And that's — so it's not saying that that is the methodology that — or that Castillo-Rivera wouldn't apply. Your Honor, we would submit that while this Court did not explicitly hold that the categorical approach was applied, they did not use that magic language, what they did say was that there was a comparison of the elements and — of the two crimes of the underlying statute and also the Federal crime of abusive sexual contact, which is at issue here. So — But you lose if we apply Castillo-Rivera analysis here, right, because you don't have any examples. Well, Your Honor, we do not have any Mississippi State cases. However, we would submit that we've presented similar cases from other jurisdictions that have found fetishes and French kissing and other conduct that was found sufficient for conviction. You're correct, Your Honor. We have not provided a Mississippi State case. However — Does that mean you lose in following up what Judge Farrell said? Yes, Your Honor. Again, we would submit that the Castillo-Rivera analysis would not apply to Mr. Young. However, if this Court does find that Castillo-Rivera applies, then yes, during — based upon the analysis in Castillo-Rivera, we would not prevail. What other cases other courts may have done is not really relevant to making a determination of what Mississippi would do? That's correct, Your Honor. We have offered persuasive authority in the hopes of showing that there are other jurisdictions out there that have found sufficient certain conduct for purposes of lustful touching that is not necessarily described under the Federal Abusive Sexual Contact Code. If you take a look at just Coleman, though, and that's a SORNA case, why isn't this Minnesota — pardon me, Mississippi statute comparable to the SORNA statute? Why is there not comparability here? Yes, Your Honor. Thank you. That was the next point that I would have liked to make. The Mississippi statute, 97-523, covers a much broader range of conduct than the Minnesota statute for sexual — second-degree sexual conduct. But Coleman says it doesn't have to be identical. That's correct. It does not have to be identical. It can be comparable to, which this Court applied a slightly broader analysis to. We would submit that the Mississippi Code, 97-523, is much broader than just slightly. Mississippi Code, 97-523, encompasses the touching of — may be — a conviction may be found under that statute if any part of — Holding hands. Well — Holding hands with a minor. Perhaps. Yes. Yes, Judge Galley. Any part of the body is touched. Minnesota statute required the intimate parts of the body be touched. Any part of the body is significantly broader. As Judge Galley just mentioned, holding hands could possibly be found sufficient for a conviction as long as the intent of either satisfying one's sexual desire or the gratification of lust was also present. And we're not disagreeing that the intent must be present, because under the Federal Abusive Sexual Contact Code, you must have an intent to abuse, humiliate, harass, or to arouse sexual desire. And we believe that those are comparable for intent purposes. However, for the elemental purposes of what part of the body may be touched, we believe Mississippi is more broad than Minnesota and the Federal Abusive Sexual Contact. Now, to be sure, though, however, whether the analysis from Joe Coleman — whether — excuse me — to be sure whether the analysis through his comparison of the plain language of SORNA or through the categorical approach, which we believe is appropriate here, our argument does remain the same. It's because of that one element of the — any part of the body that must be found under Mississippi Code, which we believe criminalizes a much broader range of conduct than the Federal Abusive Sexual Contact Code. My colleague, Ms. Bradley, has cited the two Fifth Circuit cases where the circumstance-specific approach has applied. We do not believe that these are relevant to this analysis because they were not dealing with SORNA tier classification issues. Rather, in Gonzales-Medina, the statute at issue was 16-911-5C, consensual sex as a defense, where based upon an analysis of the elements, this Court found that the conduct was relevant, not the elements of the statute. Again, it was not a SORNA tier classification case, so we don't believe that it would apply here. Now, the other two cases that were cited by Ms. Bradley, one was an Eleventh Circuit case, Dodge, and the other was United States v. Schofield from this circuit. Those two cases also did not apply to SORNA tier classification issues. Rather, there, the issue was whether transferring of obscene material was, in fact, a sex offense that required someone to register. The analysis went to the residual clause language. And importantly, this is not a residual clause issue case. It's a SORNA tier classification. We agree, I believe, that 16-911-4A2 for abusive sexual contact is the only statute that's important for this case. Now, we would submit that, back to Duenas-Alvarez, that the plain language at issue that requires the defendant to provide these case examples does not apply to these plain language arguments. In fact, we would submit that Duenas-Alvarez applies in a very limited, a very narrow set of circumstances, one that is not found in Mr. Young's case. The majority of the facts of Duenas-Alvarez, a removal case, not a SORNA tier classification case, argue that the California's natural and probable consequences doctrine, via an aiding and abetting theory, made the California vehicular theft statute more broad and criminalized conduct that other statutes would not, other state statutes would not. And that's the difference between Mr. Young and Duenas-Alvarez. We're applying the plain language, any body parts, from the Mississippi Code 97-523 to our analysis. We're not asking this court to look at foreseeability and aiding and abetting liability. We're, we're asking that this court read 97-523, the any body part, in a comparison with the federal abusive sexual contact, which lists six specific body parts. Those body parts are the genitalia, the anus, the groin, the breast, the inner thigh, or the buttocks of a victim. There's no- Are we going circular now? Because you're leaving off the gratification, lust, indulging, and depraved licentious sexual desires language. I mean, if you read all that out, aren't we back to we're just creating what ifs that may be prohibited by this circuit's precedent? Your Honor, I, I, we would contend the intent is, is comparable to. There's no, we're not arguing that the intent from the Mississippi Code, either the gratification of lust or the licentious sexual desire, is at issue here. We believe that is comparable to the federal abusive sexual contact intent requirement for intent to arouse sexual desire. That's why I get stuck on, isn't this just comparable? Again, Your Honor, we would submit that any body part suggests that any part of the body might be relevant for conviction, as long as that intent requirement is also found. Federal abusive sexual contact limits it to six specific body parts. There's- So, it's not comparable because, as Judge Dali said, it could be holding hands or fist bumps or high fives or something. That's correct. And that's because it doesn't do these more sexual body parts for, for, for lack of a more technical- That's correct. Yes, Judge Elrod. That is our argument, is that the language from the Mississippi 97-523 encompasses any body part, whether it's fist bumping, high fives, shoulder massages, foot fetishes, or French kissing. Those can all be sufficient under the Mississippi statute. However, if you were to compare that to the federal abusive sexual contact, it would not be sufficient because there was no touching of any of those specific six body parts. But then that gets us back to, would anybody actually bring a lawsuit for someone holding hands or fist bumping or high fiving, even if they had some weird, or maybe I shouldn't say weird, some sort of different fetish for that? Nobody would bring a lawsuit, no, they wouldn't, nobody would prosecute somebody for that. So that's, we get back to Castillo-Rivera. If, if I may, the Mississippi, again, has not provided that sort of factual analysis. There's no case out there that suggests fist bumping, French kissing, any sort of fetish has been prosecuted under 97-523. Other jurisdictions have. There's a California case that was cited in our reply brief, People v. Kalosinski, which found that French kissing was relevant for sexual conduct in a very similar worded statute that Mississippi 97-523 has been. We also would additionally point to the Castillo-Rivera, I believe it was a concurring, it may have been a dissent from Judge Higginson, who stated that the conduct that States define criminal may not be expressed in appellate level decisions. And the evidence required to satisfy this case example from Duane S. Alvarez may just be unavailable. Your Honor, I would also like to point to one other argument that Ms. Bradley has referenced in her brief, and that would be harmless error. Now, Mr. Young faced a range of 18 to 24 months as a Tier 3 offender, was sentenced to 24 months, the high end of the guidelines. He would have faced only 10 to 16 months as a Tier 1 offender. Additionally, as a Tier 3 offender, he will have to register for a longer period of time and more frequently than a Tier 1 offender. Now, the government has the heavy burden of convincingly proving that the court would have imposed a particular sentence in mind. Those cases, that comes from United States v. Grossi and United States v. Rico Mejia. To support its contention, Ms. Bradley references a few statements from the sentencing transcript where the district court stated that it was seriously considering varying from the guidelines, but at this moment, I don't see it. I'm not going to do it. The second statement is, uh-huh, well, that's the reason I was considering departing upwards, and if I see you again, I'm going to keep that in consideration. Now, all that can be gleaned from these statements is speculation. There was no particular sentence that was definitively stated, nor did the court definitively state that it was going to vary upwards. In fact, we would submit the opposite is true, that based on those statements, the court talked itself out of having to vary upwards and decided to sentence a within-guideline sentence to the high end. And there's nothing that says, I would give this 24 months regardless, which is often the case where they say that. That's correct. There was no statement that suggested what particular sentence the court had in mind had it decided to vary upwards. I believe my time is almost up, Your Honors. Just a matter of personal inquiry, are you with the Northern District of Mississippi Public Defender? Yes, Your Honor, I am. Well, congratulations. Thank you. Good morning. Judge Jolly, Judge Elrod, Judge Rowley, and the counsel opposite. My name is Susan Bradley. I represent the United States for purposes of this appeal and in the proceedings before the District Court in this case. It's the government's position that the court did not procedurally err when it determined that the appellant was a Tier 3 sex offender because, first of all, there was no Supreme Court or Fifth Circuit precedent in effect at the time that required the court to apply a categorical approach in determining his tier. Second of all, even if the court applied the categorical approach, the Mississippi fondling or lestal touching statute is comparable to federal abusive sexual contact and not substantially broader. And third, the facts of Mr. Young's case, the appellant clearly qualified him as a Tier 3 offender. I'd like to spend some time talking about why the court did not procedurally err and then talking about why the Mississippi statute is not substantially broader and is comparable to federal abusive sexual contact. And finally, some policy concerns about the application of the categorical approach, particularly the rigid application of the categorical approach as it applies to SORNA defendants. If the court would like me to take that in a different order, I will. At the time that Mr. Young, the appellant, was sentenced in this case, there had been a few decisions in this court that we could have looked to, nothing specific regarding a sex offender and his tier. In 2007, this court had applied a common sense approach in a reentry after deportation prosecution to analyze some state sex crime statutes and find that they were comparable to the federal abusive sexual contact statute. Those were the cases of Ramos-Sanchez and Balderas-Rubio. We had the 2014 case of United States v. Gonzalez-Medina, where this court found that the circumstance specific approach was the correct approach for determining an age differential and whether a defendant was required to register under SORNA. We then had the 2015 case of United States v. Schofield, in which this court noted that the non — the circuit favored the non-categorical approach, but there was no need to decide which approach, categorical or non-categorical, was most appropriate because Mr. Schofield's conviction would qualify under either. It wasn't until after the appellant was sentenced in this case that this court decided the case of United States v. Coleman in March of 2017, wherein you applied a categorical approach to determine that Mr. Coleman's conviction under the Minnesota criminal sexual conduct statute was comparable to federal abusive sexual contact. Does that matter as long as it was preserved and they were prescient in anticipating that the law was different? It certainly doesn't preclude them from bringing the argument, but I guess my point is that I don't think that there was any precedent that required the district court to apply a categorical approach at the time of sentence. Right. But if they — if it was wrong, it doesn't matter whether he — that's an unfortunate thing that falls on our very diligent district courts, if they don't know — Right. If the court was preserved in that case, that very case, it could have been that case that would set the law as opposed to Coleman. Certainly, the appellant has every right to make the argument that he's making here today. So we have to fix it even if he didn't anticipate that that was the law, don't we? If you find that the court erred and should have applied a categorical approach, then we have to move from there. But I think the court had before reasons for applying a circumstance-specific approach when Mr. Young was sentenced. And that was basically — we knew what Mr. Young had done. There was no dispute. There was no question about the underlying facts of his conviction. They were spelled out in the presentence report. That happens in all kinds of cases, but we're still left with this Byzantine categorical and modified categorical world, where we know the real facts and they make up some — and they argue that the statute would apply more broadly, and it's to some other person. It's not even there. And we do that all the time, because that's what the Supreme Court has told us we have to do. We do. But the Supreme Court has not come out and told us that we have to do that in SORNA cases, that the categorical approach must apply in a SORNA case. And that really brings up some of the policy arguments that I wanted to make. And when I make these, I mean no disrespect to this Court or any other court that has said that the categorical approach is appropriate, but I think there are differences in the SORNA cases and in the cases in which the Supreme Court has applied the categorical approach and which this Circuit has applied the categorical approach. First of all, in a SORNA case, SORNA defendants are the only ones I know of who are required to register because of their past conduct, because of what they've done, because of concerns for . . . SORNA is a civil statute, though, it's not a criminal statute. Defendants convicted of sex crimes are the only defendants who are required to register, though, because of their past conduct. And they're required, I mean it's not a . . . SORNA is not a criminal statute. Is that correct? SORNA is a civil act, I suppose. And so you're comparing a criminal statute to a statute that's on the civil side of the Court, of the law, right? That would be right. Is that unusual or is that . . . I think that's different from other cases where the categorical approach is applied. Is that a material difference? And I think we have these registration requirements for our sex offenders because of concerns that Congress had for the safety of children, because of specific recidivism concerns in these cases, because of horrific crimes that have been perpetrated by sex offenders that we can all recall from the 70s and up through the mid-2000s. And so this is the only category of offenders where Congress has said we need to keep track of them. And the public needs to know where they are. It may be an unfair question, but if that's the case, then why do we even differentiate between Tier 1, Tier 2, and Tier 3? Well, Congress wanted to set forth requirements for how long they must register, as well as our offense level and which ones we consider the most serious sex crimes. But I guess the application of the categorical approach, and particularly a rigid application, undermines what Congress intended to do. It handicaps the district court by preventing the district court from looking at why these offenders are required to register and determining what tier they should be in based on that reason that they were required to register. And it will also affect the amount of time that they have to register. I think SORNA cases are also a little bit different from other cases where the categorical approach is applied, because in a SORNA case, we almost always know the facts of the underlying conviction. That underlying conviction provides the requirement for registration. It provides fairly much the basis for the failure to register case. I think that can be differentiated from Armed Career Criminal Act cases and immigration cases where the underlying conviction is simply serving as a statutory enhancement. I think that is the difference between SORNA cases and some of the other cases where the categorical approach was applied by the Supreme Court and the others. But you were attempting, before we interrupted, about policy arguments. And I guess what I'm trying to understand is, I mean, so he was convicted of failure to register, and we're arguing here just about enhancements. And I'm wondering, why are we even bothering with different levels of enhancements? I mean, why is there an enhancement on a failure to register to begin with? And I wouldn't call it an enhancement, Your Honor. But I think that, you know, as always, we have to get to our base offense level. And Congress obviously wanted the more serious sex offenders to register for longer than the less serious sex offenders. You know, sometimes we see a case where an individual has touched a person on the breast. That is less serious than an individual that has molested a small child. And so we have these differences that Congress set forth for district courts to look at in sentencing. And I think that that sets these cases apart somewhat from some of the other cases. So the sentencing guidelines aren't all that clear to us as to how to apply the enhancements. So, I mean, how do we get by other than this categorical approach? Well, you know, in each of level three sets forth a number of ways a defendant would qualify as a level three. Level two sets forth the types of statutes that would qualify, and level one the same. So I think there is direction for the district courts as to which tier to apply, but I think the difficulty becomes when you apply the categorical approach, and the district court has to, instead of looking at the facts and saying, okay, this individual is a tier three offender, now they have to make a comparison, I would say a difficult comparison, between a Federal statute and a State court statute to try and determine which tier the defendants will fall in. I think this is the strict application of the categorical approach will lead to a lot of appeals in SORNA cases. That's because in SORNA cases, look at the Coleman case, there were only a couple of words that were different, I think, between the Minnesota statute under which Mr. Coleman was convicted and the Federal abusive sexual contact statute. And yet, just because of a few words difference, there was a legitimate appeal that resulted where the court had to determine, was it substantially comparable, was it comparable and not broader. But it was resolved fairly quickly, and the rule is that if it's just a little bit broader, then it's okay, even under categorical. I think this does open the door for a lot of appeals, though, because each State has dozens of statutes that require registration. And so are we now going to be looking at the wording of those statutes and trying to compare each and every statute to a Federal statute to determine tiers? Have we done that already in robbery and all these other contexts? So what's one more? We do. I just think that these cases are somewhat different, based on the concerns that Congress had about sex offender and the intent of Congress to make this a broad-hitting statute. So Mr. Siggs said these aren't comparable. There's seven specific body parts enumerated in the Federal, and that's not the case here in Mississippi. What's your response? Our response is that the statutes are comparable. Just because the Mississippi statute does not delineate a list of body parts does not make it substantially broader because of the intent factor that is there. There are two ways that you can violate that Mississippi statute, two intent factors, either for gratifying lust or indulging depraved licentious sexual desires. I would argue that that is less broad than the intent factor under the Federal statute, which can be violated when you touch with intent to humiliate or harass. I would argue that the Federal statute is broader because it has five different intent factors set forth. But what we're talking about is whether you can be liable for holding hands or fist-bumping, et cetera, and or kissing or — I think the Court touched on this when Mr. Sy was arguing, but we would submit that this Court and the Supreme Court and Gonzales v. Duenas-Alvarez has said that this is not an invitation to apply legal imagination in all the possible ways this statute may be violated. But if we don't get to imagination, if we didn't have the overlay of Castillo-Rivera-Duenas-Alvarez, put that to one side. That's the next step. Straight-up categorical, is this more than slightly broader because it allows you to be liable for hand-holding? It seems like it might very well be more than slightly broader. I understand you say it's narrower on intent, but what we're talking about is on body parts. I think the intent factor is what prevents it from being substantially broader. It is substantially broader in body parts, though, more than slightly. Under the Mississippi statute, any body part theoretically would qualify if it was done for the intent to gratify lust or indulge depraved licentious sexual desires. But my argument would be, you're not going to have that intent present if you merely fist bump, if you touch a child on the pussy-toe. Why not? There are lots of people with all sorts of very different sexual predilections, officers. Weird. You said weird. Yes. You can stick with that. And that may be, and again, I have to fall back on the argument that the Mississippi courts have not applied the statute in that way. It has not been applied in a non-sexual way. You know, and if the appellant needs to show that it was applied either to him or to someone else in that way, he certainly can't show that it was applied that way in his case. We know what he did. And there are no cases I have found where it was applied that way elsewhere. We cited a case in our brief, Bradford v. State, in which a defendant was pinching children on the butt in a car ride and laughing and blaming another child that was in the car. Arguably, under the Federal Abusive Sexual Contact Statute, that would qualify, because he's touching the child's buttocks. And one could argue he's doing it to humiliate or to harass. But the Mississippi Supreme Court overturned a jury conviction, and they said we do not find that there was a sexual intent here. And I found no other cases from the Mississippi Supreme Court where the statute was applied in a non-sexual way. Well, sexual way, but in a not ordinarily sexual way. What one would traditionally think to be a sexual method or a non-intimate body part. The Supreme Court may not accept our Castillo-Rivera point, though, so let's talk about your harmless error point. And the fact that the Court said, I'm going to throw the book at you next time, I don't understand how that shows the harmless error here. And I would concede, I suppose, that the harmless error argument is probably my weakest argument. And you've just conceded it's not an issue. I think that there's enough there to argue it was harmless error because the district court said, I'm considering an upward departure because of your horrible criminal history. I think the public needs to be protected from you. The district court referenced its intent or at least its consideration of an upward departure at least twice during sentencing. So if the district court determined that 24 months was an appropriate sentence, I finally settled on that. I don't think that there is any hope that the district court would have sentenced lower than that. However, I understand the district court didn't come out and say, I will give you 24 months regardless of what your offense level is. I guess part of my argument was in knowing the district court judge and seeing the facts that he referenced on several occasions, his consideration of an upward departure from the 18 to 24-month range. Okay. Is that your argument? We have it. Thank you, Ms. Bradley. Finally, Your Honor, may I bring up one more concern? Just as it applies to the categorical approach, it leaves me to wonder, one, about the appeals, two, about undermining the intent of Congress, and three, what happens if we decide the categorical approach and particularly a strict categorical approach is now appropriate in SORNA cases, what happens to those SORNA defendants that have already been sentenced? We've done a number of these cases in our district, and are we now opening the doors for every SORNA defendant who was a Tier II or Tier III offender that was not . . . that was sentenced before we used a categorical approach? Are we opening the door for them to come back on a 2255 and say, my statute is broader? I just want to end by saying that I think that the Fourth Circuit opinion, the concurring opinion by Judge Wilkinson of the Fourth Circuit in United States v. Dr. correctly sums up some of the concerns about the categorical approach and its strict application. And basically in that case, Judge Wilkinson said that, you know, we are getting away from what the Supreme Court intended. We have reached a place where our sentencing regime is explicitly at odds with reality. And we have now cases where we look at defendants and we assume that their conduct is based on nothing more than the very least of the acts criminalized. We're undermining the role of the district courts at sentencing. We're undermining the efforts of Congress and undermining the protection of the public. I think that all of those are legitimate concerns, particularly as it relates to Sorna. JUSTICE KENNEDY Okay, Ms. Bradley. MS. BRADLEY Thank you. JUSTICE KENNEDY Thank you for your argument. Mr. Sye, do you have some time for rebuttal? MR. SYE Thank you, Your Honor, and please the Court. There are a couple of issues that I would like to point this Court back to. The first one was Ms. Bradley had suggested that there was no Supreme Court precedent or Fifth Circuit precedent at the time of this appeal that concerned applying the categorical approach to Sorna tier classification issues. We would submit that seven other circuits did, in fact, apply either the categorical or its derivative, the modified categorical approach to Sorna tier classification issues. Those circuits, the 1st, the 4th, the 6th, the 7th, the 9th, the 10th, and the 11th. We believe also that this Court in United States v. Coleman applied a very similar analytical framework for determining whether or not a state predicate offense fell under that federal label of, in this instance, abusive sexual contact by comparing the plain language of the Minnesota statute to abusive sexual contact. Now, we believe that it is, that the facts may also not be reviewed by this Court.  BRADLEY Can I ask a question about the modified categorical approach?  SYE Of course. MS. BRADLEY You all agree that it's not the modified, but I was wondering about the situation that it says that the person with mental health, that seems to be divisible, that part of it. And so, do you see what I'm saying? Because that's a separate category of people as opposed to minors, and why isn't it divisible? And help me out with that. These, you know, this is very difficult to do with these statutes. BRADLEY And I believe the mental health element that you're referring to, is that, that's under the, a tier 3 designation? MS. BRADLEY No, I'm talking about the language of the statute itself. It does seem divisible in that way, because it lists mental, people with mental health problems in the series of things, and that would be divisible. But is that just irrelevant? BRADLEY My apologies, Your Honor. Are we discussing the Mississippi 97-523? MS. BRADLEY Yes. And I'll read it in just a second, if I can find it quickly. But if you don't have, yes, but if you have a question, and if you don't know, then that's okay. It was just, because you all both say it's not divisible, so. BRADLEY Your Honor, I would respond that the elements of the Mississippi statute at question would be an adult who intentionally touches any body part of a victim under the age of, I believe, 14, or excuse me, under the age of 16, with either the intent to gratify their lust or to arouse their licentious sexual desires. We believe that those were the only elements that were relevant for parsing out 97-523, and that is why we concluded that indivisibility of the statute was more appropriate. MS. BRADLEY Okay. BRADLEY The second thing that I would like to direct this Court's attention to is that we just wanted to submit that we are not undermining Sorna's intent at all. What we're trying to do here is apply the categorical approach. Granted, the categorical approach is essentially the rules against perpetuity, perpetuities of criminal law. It's one of those complicated, almost antiquated methods of trying to establish how these two statutes are comparable. A lot of defense attorneys, you know, have difficulty in doing this, but we're not trying to undermine Sorna. What we're trying to do is apply the precedent that has been set forth under the Supreme Court's circuits that have addressed similar issues. The final thing that I would like to say is that Ms. Bradley also pointed to the intent argument. And again, we would just like to submit that the intent is a requirement for conviction. We're not objecting to that. We don't disagree. But if that intent has been found, the one thing that this Court must decide is whether any body part under the Mississippi 97-523 is comparable or slightly broader than those six very specific limited body parts under federal abusive sexual contact. We would submit that is much, much broader. It is not slightly broader. So if it said décolletage, then you would say, well, that's slightly broader, but hand is just broader. Well, Your Honor— Is that a—I mean, that's a hypo. We would submit that if Mississippi kind of—let's say that they had the language intimate parts, then that would be comparable to. But when you submit that any body part is the plain language of the Mississippi statute, that is clearly more broad than the six specific limited enumerated body parts. The ruling that Mr. Young seeks will implicate how this Court will decide similar issues in the future. The categorical approach is the appropriate method for—Your Honor, my time is up. Go ahead. Thank you. The categorical approach is the appropriate method for determining sworn-to-tier classification issues. Mr. Young urges this Court to follow its own precedent in U.S. v. Coleman and its sister circuits in determining whether the proper method for sworn-to-tier classification is the categorical approach. Applying either approach, the plain meaning or the categorical approach, to the facts of this case demonstrates that 97-523 criminalizes a broader range of conduct than a federal abusive sexual contact. That's about as much time as I'm going to give you. Thank you, Your Honor. Thank you for your time. Okay. We will—